**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| INNOVATION TECHNOLOGIES PARTNERS, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 2:26-cv-00448-JRG-RSP |
| | § | |
| GUARDSQUARE NV, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

III. LEGAL STANDARD ..... 6

IV. ITP'S COMPLAINT SHOULD BE DISMISSED ..... 7

A. ITP Failed to Assert a Plausible Claim for Direct Infringement ..... 7

1. ITP Failed to Plead Sufficient Facts to Support Direct Infringement of the Expired Method Patents ..... 7

a. ITP Failed to Allege a Factual Bases for How Guardsquare Practiced the Expired Method Patents in the United States ..... 7

b. ITP Failed to Allege That Guardsquare Practiced the Expired Method Patents During Their Term ..... 9

2. ITP Failed to Plead Sufficient Facts to Support Direct Infringement of the Expired System Patents ..... 9

a. ITP Failed to Allege Factual Bases for How Guardsquare Practiced the Expired System Patents in the United States ..... 9

b. ITP Failed to Allege That Guardsquare Practiced the Expired System Patents During Their Term ..... 11

3. ITP Failed to Plead Sufficient Facts to Support Direct Infringement of the Active Method Patents or Active System Patents ..... 11

B. ITP Failed to Plead Multiple Claim Elements Sufficiently ..... 12

1. For All of the Active Patents, ITP Failed to Allege Factual Bases For How Any Accused Product Verifies That a Portion of the Application Associated With the One or More Functional Integrity Checks Function According to a Defined Behavior ..... 13

2. ITP Similarly Ignored Other Limitations for the Active Patents ..... 14

C. ITP Failed to Assert a Plausible Claim for Pre-Filing Indirect Infringement or Pre-Filing Willfulness ..... 15

V. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AR Design Innovations LLC v. Lowe's Companies, Inc.*,
No. 2:25-CV-00529-JRG, Dkt. 56 (E.D. Tex. June 2, 2026) (Gilstrap, J.) ....................8, 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................6, 8, 16

*Bot M8 LLC v. Sony Corp. of America*,
4 F.4th 1342 (Fed. Cir. 2021) ....................................................................13, 14, 15

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)
(Gilstrap, J.) ........................................................................................................13, 14

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ....................................................................7, 8, 11, 16

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)............................................................................................10, 15

*Cyboenergy, Inc., v. Hoymiles Power Elecs. USA, Inc.*,
No. 2:23-CV-00311-JRG, Dkt. 25 (E.D. Tex. Mar. 20, 2024) (Gilstrap, J.)...............10, 12, 16

*Fractus, S.A. v. TCL Corp.*,
No. 2:20-CV-00097-JRG, 2021 WL 2483155 (E.D. Tex. June 2, 2021)
(Gilstrap, J.) ..............................................................................................................14

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)..................................................................................................15

*Howard v. Ford Motor Co.*,
No. 1:16CV127-LG-RHW, 2016 WL 4077260 (S.D. Miss. July 29, 2016) ...................2, 9, 11

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ........................................................................................7

*Longhorn Automotive Grp., LLC v. Nissan Motor Co., Ltd.*,
No. 2:24-CV-00397-JRG, Dkt. 84 (E.D. Tex. Sep. 26, 2025) (Gilstrap, J.).............................8

*Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*,
16 F.4th 1144 (5th Cir. 2021) ........................................................................................7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006)....................8

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*,
170 F.Supp.3d 928 (E.D. Tex. 2016)....................7

*Thompson v. City of Waco, Texas*,
764 F.3d 500 (5th Cir. 2014)....................6

*Touchstream Techs., Inc. v. Altice USA, Inc.*,
No. 2:23-cv-00060-JRG, 2024 WL 1117930 (E.D. Tex. Mar. 14, 2024)
(Gilstrap, J.)....................15

*Velocity Commc'n Techs., LLC v. ASUSTek Computer Inc.*,
No. 5:25-CV-100-RWS, Dkt. 41 (E.D. Tex. Apr. 13, 2026)....................11

*Vervain, LLC v. Micron Tech., Inc.*,
No. 6:21-cv-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022)....................14

**Other Authorities**

Fed. R. Civ. P.
8(a)(2)....................6
12(b)(6)....................1, 6, 7

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Guardsquare NV ("Guardsquare") respectfully moves to dismiss Plaintiff Innovation Technologies Partners, LP's ("ITP") Complaint for failure to state a claim.

## I. INTRODUCTION

For purposes of this motion, the Asserted Patents can be divided into four groupings: the Expired Method Patents, the Expired System Patents, the Active Method Patents, and the Active System Patent.[1] ITP fails to state a plausible claim for relief for any of these groupings of patents.

First, ITP's direct infringement claims against all of the Asserted Patents fail because the Complaint fails to state any factual bases for how Guardsquare (a foreign entity) committed any infringing act ***in the United States***. As to the (Expired and Active) Method Patents, ITP failed to plead any facts supporting an allegation that Guardsquare performed the claimed methods in the United States. At most, ITP included factual allegations that Guardsquare sold software that is allegedly capable of infringing the claims—but this is legally insufficient to plead direct infringement of method claims. As to the (Expired and Active) System Patents, ITP's claims similarly fail because the Complaint fails to allege how Guardsquare's sale of software products can infringe the asserted system claims. Perhaps recognizing that Guardsquare's software products alone cannot infringe the system claims, the Complaint makes conclusory allegations that (i) Guardsquare directly infringes during testing (but fails to allege or plead any facts suggesting that Guardsquare (a foreign entity) performs any testing in the United States), and (ii) that third parties (such as Guardsquare customers but not Guardsquare) may use Guardsquare's software to create the required systems. Neither of these allegations is legally sufficient to plead direct infringement against Guardsquare.

[1] See Background section, below, for further details regarding these groupings.

Second, as to the Expired (Method and System) Patents, ITP's allegations further fail because the Complaint lacks any factual allegations of activity ***during the Expired Patents' terms***. ITP's failure to plead facts regarding when alleged infringement occurred, and that it occurred during the patents' terms, is grounds for dismissal. *See Howard v. Ford Motor Co.*, No. 1:16CV127-LG-RHW, 2016 WL 4077260, at *2-3 (S.D. Miss. July 29, 2016) (dismissing with prejudice, because plaintiff failed to allege activity occurred during the term of the patent).

Third, ITP's infringement allegations against the Active (Method and System) Patents should be dismissed because ITP failed to set forth factual bases for ***how*** the accused technologies infringe multiple claim limitations. For example, every asserted claim of the Active Patents requires the accused product to verify that one or more portions of the application associated with the one or more functional integrity checks "function according to a defined behavior." The Complaint, however, ignores this limitation. Indeed, searching for the words "defined behavior" in the Complaint confirms that the only place this language appears is when ITP repeats the entirety of the asserted claims of the Active Patents. (Compl. ¶¶ 149, 171, 187, 202, 225.) ITP similarly failed to adequately address multiple other limitations, such as the: "initial execution" limitations ('814, '469, and '085 patents); "expected input and output behavior" limitations ('814 and '146 patents); and "expected resource call behavior" limitations ('751, '469, and '085 patents). ITP's failure to explain its factual basis for these limitations warrants dismissal.

Finally, ITP's pre-filing indirect infringement and willfulness allegations should be dismissed because ITP failed to include the necessary factual predicates in the Complaint to support a claim for pre-filing indirect infringement—most notably, ITP failed to plead any factual basis for an assertion that Guardsquare had pre-suit knowledge of the patents.

## II. BACKGROUND

ITP filed its Complaint on June 5, 2026, alleging infringement of U.S. Patent Nos. 7,581,103 (the "'103 Patent"); 8,001,388 (the "'388 Patent"); 8,352,747 (the "'747 Patent"); 8,713,326 (the "'326 Patent"); 9,141,788 (the "'788 Patent"); 9,953,159 (the "'159 Patent"); 10,423,779 (the "'779 Patent"); 10,496,814 (the "'814 Patent"); 10,872,146 (the "'146 Patent"); 11,531,751 (the "'751 Patent"); 11,829,469 (the "'469 Patent"); and 12,254,085 (the "'085 Patent") (the "Asserted Patents"). (Compl. ¶ 2.)

ITP asserts that Guardsquare, a Belgium corporation, infringes one or more claims of the Asserted Patents through its software products, DexGuard and iXGuard ("Accused Instrumentalities" or "accused software products"). (Compl. ¶¶ 3, 6, 37, 43, 60, 74, 90, 105, 121, 136, 150-151, 171, 187, 203-204, 226-227.)

The Complaint alleges that Guardsquare directly infringes each of the Asserted Patents, that Guardsquare indirectly infringes the '814, '469, and '085 patents, and that Guardsquare willfully infringes the '814, '146, '751, '469, and '085 patents. (Compl. ¶¶ 37, 43, 60, 74, 90, 105, 121, 136, 150-151, 171, 187, 203-204, 226-227.)

For purposes of the present motion, the Asserted Patents can be divided into four groupings. ITP's direct infringement allegations for each of these groupings are summarized below.

<u>The Expired Method Patents (the '103, '388, '747 and '326 Patents)</u>

The '103, '388, '747 and '326 patents are referred to herein as the Expired Method Patents because (i) each of the patents expired multiple years prior to filing of the Complaint, and (ii) the only claim ITP identified in the Complaint is a method claim. (Compl. ¶¶ 43, 60, 74, 90.) For each, ITP includes the same conclusory allegation as to direct infringement:

> Guardsquare has directly infringed the ['103/'388/'747/'326] Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the Accused Instrumentalities to practice the claimed invention in the ['103/'388/'747/'326] Patent.

(Compl. ¶¶ 43, 60, 74, 90.)

Throughout the Complaint, ITP does not allege, nor provide any factual basis for alleging, that Guardsquare has performed the claimed method in the United States.[2] Nor does ITP allege, nor provide any factual basis for alleging, that any allegedly infringing activities occurred during the term of the Expired Method Patents.

The Expired System Patents (the '788, '159, and '779 Patents)

The '788, '159, and '779 patents are referred to herein as the Expired System Patents because (i) each of the patents expired multiple years prior to filing of the Complaint, and (ii) the only claim ITP identified in the Complaint is a system claim. (Compl. ¶¶ 104, 120, 135.) Each of the asserted claims for the Expired System Patents requires a "non-transitory computer-readable storage medium." (*Id.*) The Complaint includes two allegations purportedly related to infringement of the "non-transitory computer-readable storage medium" requirement.

First, although ITP does not allege indirect infringement of the Expired System Patents, the Complaint asserts that when a third party (such as a customer) uses Guardsquare's software products to build a protected application, the resulting application binary constitutes a non-transitory computer-readable storage medium:

> Third parties—including application developers who are customers of Guardsquare in the United States and in Texas—have directly infringed the ['788/'159/'779] Patent by using the Accused

[2] While for other patents, ITP includes generic allegations that "Guardsquare has directly infringed…during testing of its products and provision of services," ITP does not include such an allegation for the Expired Method Patents. Even if ITP included such an allegation, the Complaint does not include any allegation, nor any factual basis to support an allegation, that Guardsquare (a foreign entity) tests its products in the United States.

> Instrumentalities to create, distribute, and execute self-checking software programs that practice the claimed invention of the ['788/'159/'779] Patent. Each time a Guardsquare customer uses the Accused Instrumentalities to build a protected application, the resulting application binary constitutes a non-transitory computer-readable storage medium storing programming instructions that, when executed, perform the operations claimed in the ['788/'159/'779] Patent. These protected application binaries are distributed to and executed by end users in the United States, thereby directly infringing Claim 1 of the ['788/'159/'779] Patent.

(Compl. ¶¶ 105, 121, 136.)

Second, ITP includes a conclusory statement that "Guardsquare directly infringes … during testing of its products and provision of services":

> Guardsquare has directly infringed the ['788/'159/'779] Patent through its software applications and programs that comprise Accused Instrumentalities, which meet every element of at least exemplary Claim 1 as set forth above, including during testing of its products and provision of services.

(Compl. ¶¶ 115, 130, 144.) Notably, however, even in the above allegation ITP does not allege that Guardsquare (a foreign entity) performed this alleged testing in the United States. Indeed, the Complaint never makes any allegation, nor provides any factual basis to support an allegation, that Guardsquare (a foreign entity) tests its products in the United States.

Throughout the Complaint, ITP does not provide any factual basis for alleging that Guardsquare has made, used, sold, or offered to sell a "a non-transitory computer-readable storage medium" in the United States. Nor does ITP allege, nor provide any factual basis for alleging, that any allegedly infringing activities occurred during the term of the Expired System Patents.

<u>The Active Method Patents (the '814, '146, '751, and '469 Patents)</u>

The '814, '146, '751, and '469 patents are referred to herein as the Active Method Patents because (i) the patents, on their face, were active at the time the Complaint was filed, and (ii) the only claim ITP identified in the Complaint is a method claim.

As to direct infringement, the Complaint makes conclusory allegations that Guardsquare (a foreign entity) uses the method claims, but makes no allegation (and provides no factual basis for asserting) that Guardsquare practices the methods in the United States. For example, for each of the Active Method Patents, ITP alleges that Guardsquare directly infringes "during testing of its products and provision of services." (Compl. ¶¶ 164, 180, 195, 218.) But, as discussed above, neither in this allegation nor anywhere else in the Complaint does ITP allege, nor provide any factual basis to support an allegation, that Guardsquare (a foreign entity) tests its products in the United States.

The Active System Patent (the '085 Patent)

The '085 patent is referred to herein as the Active System Patent because (i) the patent, on its face, was active at the time the Complaint was filed, and (ii) the only claim ITP identified in the Complaint is a system claim. Similar to the patents discussed above, ITP makes the conclusory allegation that Guardsquare directly infringes the '085 patent "during testing of its products and provision of services." (Compl. ¶ 239.) But, once again, neither in this allegation nor anywhere else in the Complaint does ITP allege, nor provide any factual basis to support an allegation, that Guardsquare (a foreign entity) tests its products in the United States.

## III. LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court should dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead enough facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).

The court accepts well-pleaded facts as true but "will [] not accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citations omitted). Morever, the court should "not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action." *Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted).

Deciding a motion to dismiss under Rule 12(b)(6), "[t]he court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F.Supp.3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## IV. ITP's COMPLAINT SHOULD BE DISMISSED

### A. ITP Failed to Assert a Plausible Claim for Direct Infringement

#### 1. ITP Failed to Plead Sufficient Facts to Support Direct Infringement of the Expired Method Patents

ITP's direct infringement claims for each of the Expired Method Patents fail because ITP failed to plead any facts showing (i) how Guardsquare (a foreign entity) performed the allegedly infringing methods in the United States, and (ii) that Guardsquare performed the allegedly infringing methods during the patents' term.

##### a. ITP Failed to Allege a Factual Bases for How Guardsquare Practiced the Expired Method Patents in the United States

For each of the Expired Method Patents, ITP includes the same conclusory allegation as to direct infringement—merely rehashing the statutory language:

> Guardsquare has directly infringed the ['103/'388/'747/'326] Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of the

> Accused Instrumentalities to practice the claimed invention in the ['103/'388/'747/'326] Patent.

(Compl. ¶¶ 43, 60, 74, 90.)

First, as to ITP's claims that Guardsquare manufactures, sells, imports, and/or offers to sell the accused software products, these allegations fail as a matter of law because a defendant cannot infringe a method claim by providing software that is merely capable of performing the steps of the claimed method. *See, e.g., Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). As this Court recently explained, "[g]iven that method claims are only infringed when the claimed process is performed, … , the [Complaint] must include some allegations of how or why the claimed method is actually performed when [Guardsquare] makes or provides the software." *AR Design Innovations LLC v. Lowe's Companies, Inc.*, No. 2:25-CV-00529-JRG, Dkt. 56 at 6 (E.D. Tex. June 2, 2026) (Gilstrap, J.) (citation omitted). ITP failed to include any such allegations in the Complaint. Accordingly, its allegations should be dismissed. *Id.*

Second, ITP's allegation that Guardsquare has infringed through "use" of the accused software products also fails as a matter of law. As an initial matter, ITP's "use" allegation is merely a rehash of the statutory language which amounts to a legal conclusion that this Court is not required to accept as true. *See Twombly*, 550 U.S. at 555. Indeed, ITP's conclusory allegation is particularly unwarranted in this case because Guardsquare is a foreign entity and the Complaint lacks any factual basis to suggest that Guardsquare has practiced the methods in the United States. *Collins*, 224 F.3d at 498 (a court "will [] not accept as true conclusory allegations or unwarranted deductions of fact."). "None of the text, screenshots, or links in the Complaint allow the Court to draw a reasonable inference that [Guardsquare] practices the [Expired Method Patents] within the United States." *Longhorn Automotive Grp., LLC v. Nissan Motor Co., Ltd.*, No. 2:24-CV-00397-JRG, Dkt. 84 at 3 (E.D. Tex. Sep. 26, 2025) (Gilstrap, J.). Accordingly, dismissal is warranted.

*Id*. at 3-4.

**b. ITP Failed to Allege That Guardsquare Practiced the Expired Method Patents During Their Term**

ITP's allegations as to the Expired Method Patents are also insufficient to state a plausible claim for relief because ITP failed to provide factual allegations that Guardsquare's alleged infringement occurred during the patents' term. *See Howard*, 2016 WL 4077260, at *2-3 (dismissing with prejudice, because plaintiff failed to allege activity occurred during the term of the patent).

**2. ITP Failed to Plead Sufficient Facts to Support Direct Infringement of the Expired System Patents**

ITP's direct infringement claims for each of the Expired System Patents fail because ITP failed to plead any facts showing (i) how Guardsquare (a foreign entity) infringed the system claims in the United States, and (ii) that Guardsquare's alleged infringement occurred during the patents' terms.

**a. ITP Failed to Allege Factual Bases for How Guardsquare Practiced the Expired System Patents in the United States**

Each of the asserted claims for the Expired System Patents requires a "non-transitory computer-readable storage medium." (Compl. ¶¶ 104, 120, 135.) Guardsquare does not sell or offer to sell any hardware device with a "non-transitory computer-readable storage medium." Nor does the Complaint include any factual allegation that Guardsquare has sold or offered to sell such a device. Instead, the Complaint alleges that Guardsquare sells software products. (*See, e.g.*, Compl. ¶¶ 6, 37.) Recognizing that Guardsquare's software products cannot infringe the asserted system claims, ITP makes two allegations that attempt to bolster its argument. Both allegations fail to state a claim for direct infringement as a matter of law.

First, ITP alleges that third parties (not Guardsquare) have directly infringed:

> Third parties […] have directly infringed the [individual patent] by using the Accused Instrumentalities to create, distribute, and execute self-checking software programs that practice [individual patent]. Each time a Guardsquare customer uses the Accused Instrumentalities to build a protected application, the resulting application binary constitutes a non-transitory computer-readable storage medium storing programming instructions that, when executed, perform the operations claimed in the [individual patent]. These protected application binaries are distributed to and executed by end users in the United States, thereby directly infringing [individual patent].

(Compl. ¶¶ 105, 121, 136.) This allegation might be relevant if ITP was alleging indirect infringement of the Expired Method Patents. But ITP has not done so[3]—it has only asserted direct infringement. And there are simply no facts asserted here that Guardsquare itself has sold, offered to sell, or imported a "non-transitory computer-readable storage medium" as required by the claims. *See Cyboenergy, Inc., v. Hoymiles Power Elecs. USA, Inc.*, No. 2:23-CV-00311-JRG, Dkt. 25 at 7 (E.D. Tex. Mar. 20, 2024) (Gilstrap, J.) (finding dismissal appropriate where plaintiff "fail[ed] to plausible allege that Defendant uses, offers to sell, sells, or imports a system, let alone a system configured as required" by the claims).

Second, ITP makes a conclusory statement that "Guardsquare directly infringes … during testing of its products and provision of services":

> Guardsquare has directly infringed the ['788/'159/'779] Patent through its software applications and programs that comprise Accused Instrumentalities, which meet every element of at least [the] exemplary [] as set forth above, including during testing of its products and provision of services.

(Compl. ¶¶ 115, 130, 144.) As an initial matter, this allegation fails because Guardsquare is a foreign entity and ITP makes no allegation that the alleged "testing of its products" occurred in the

[3] To the extent ITP intended to include a claim for induced infringement of the Expired Patents, such a claim would also fail. Induced infringement requires knowledge of the patent and patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). And ITP has not plead that Guardsquare had knowledge of the Expired Patents prior to their expiration.

United States. Moreover, even if ITP intended to state that the alleged testing occurred in the United States, ITP failed to provide any facts to support such an allegation. Given that Guardsquare is a foreign entity, and the Complaint only includes a conclusory allegation of testing, the Court need not and should not give this allegation any credence. *Collins*, 224 F.3d at 498 (a court "will [] not accept as true conclusory allegations or unwarranted deductions of fact."); *Velocity Commc'n Techs., LLC v. ASUSTek Computer Inc.*, No. 5:25-CV-100-RWS, Dkt. 41 at 7-8 (E.D. Tex. Apr. 13, 2026) (granting defendant's motion to dismiss, because for "a [defendant] located in Taiwan" requires more than just "barebones" "use and testing" language). Instead, the Court should view ITP's testing allegation for what it is: a boilerplate allegation that fails to provide the level of detail and notice required by the *Twombly/Iqbal* standard. *Cf. AR Design Innovations*, No. 2:25-CV-00529-JRG, Dkt. 56 at 7; *Velocity Commc'n Techs.*, No. 5:25-CV-100-RWS, Dkt. 41 at 7-8.

#### b. ITP Failed to Allege That Guardsquare Practiced the Expired System Patents During Their Term

ITP's allegations as to the Expired System Patents are also insufficient to state a plausible claim for relief because ITP failed to provide factual allegations that Guardsquare's alleged infringement occurred during the patents' terms. *See Howard*, 2016 WL 4077260, at *2-3 (dismissing with prejudice, because plaintiff failed to allege activity occurred during the term of the patent).

### 3. ITP Failed to Plead Sufficient Facts to Support Direct Infringement of the Active Method Patents or Active System Patents

ITP's allegations of direct infringement of the Active (Method and System) Patents are similarly insufficient in that they fail to plead how Guardsquare (a foreign entity) allegedly infringes the asserted claims in the United States.

First, as to the Active Method Patents, ITP's allegations are essentially the same as the

allegations discussed above for the Expired Patents and fail for the same reasons. ITP has failed to plead facts as to how Guardsquare itself is performing the claimed method in the United States. Instead, ITP has—at most—alleged that Guardsquare is selling and/or offering to sell the accused software products in the United States. But selling and/or offering to sell software that is capable of an infringing use is not enough to directly infringe method claims. *AR Design Innovations*, No. 2:25-CV-00529-JRG, Dkt. 56 at 6.

Second, as to the Active System Patent, ITP's allegations are essentially the same as the allegations discussed above for the Expired System Patents and fail for the same reasons. The Complaint simply does not include any facts that Guardsquare itself has sold, offered to sell, used, or imported a "non-transitory computer-readable storage medium" in the United States as required by the asserted claim of the Expired System Patent. Accordingly, dismissal of ITP's direct infringement claim is appropriate. *Cyboenergy*, No. 2:23-CV-00311-JRG, Dkt. 25 at 7.

### B. ITP Failed to Plead Multiple Claim Elements Sufficiently[4]

ITP's infringement allegations for each Asserted Patent follow the same general pattern: ITP reproduces the language from one asserted claim, then copies in screenshots from various sources with a disorganized discussion of the asserted claim. ITP's Complaint cites to over 80 screenshots (most of which are duplicates) but less than a quarter are annotated. When the screen shots are annotated, it is with a red box around certain wording but without any clear marker for which elements are relevant to that wording. In most instances, the allegations do not contain any explanation between the oft-repeated screenshots and the asserted claim language. Instead, ITP relies on conclusory language to purportedly demonstrate the products meeting the claim language.

[4] Given ITP's complete failure to identify any factual basis that Guardsquare directly infringed the Expired Patents, and ITP's inability to assert indirect infringement for those patents, Guardsquare is focusing on the Active Patents in this section. This should not be interpreted to suggest that Guardsquare views ITP's infringement allegations for the Expired Patents to be sufficient.

As a general matter, ITP's approach is insufficient. *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2-3 (E.D. Tex. Dec. 11, 2018) (Gilstrap, J.) (rejecting plaintiff's argument that the screenshots themselves constitute the requisite factual allegations, emphasizing "[w]hile screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.").

But more specifically, ITP's disorganized approach leads to numerous limitations being completely skipped and some limitations only addressed summarily. Specific examples of deficiencies in ITP's pleadings for the Active (Method and System) Patents are set forth below.

### 1. For All of the Active Patents, ITP Failed to Allege Factual Bases For How Any Accused Product Verifies That a Portion of the Application Associated With the One or More Functional Integrity Checks Function According to a Defined Behavior

For the Active (Method and System) Patents, each asserted claim requires the application to verify that at least a portion of the application associated with the one or more functional integrity checks function "according to a defined behavior." (Compl. ¶¶ 149, 171, 187, 202, 225.) Even though similar language appears in every single one of the asserted claims of the Active Patents, ITP ignores this limitation each and every time. Indeed, searching for the words "defined behavior" in the Complaint confirms that the only place this language appears is when ITP repeats the entirety of the asserted claims of the Active Patents. (*Id.*) But "mere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard." *See Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342, 1355 (Fed. Cir. 2021). Indeed, given the complexity of the technology at issue here, the Complaint's failure to include any indication of how this limitation is satisfied is grounds for

dismissal. *See, e.g., Fractus, S.A. v. TCL Corp.*, No. 2:20-CV-00097-JRG, 2021 WL 2483155, at *3 (E.D. Tex. June 2, 2021) (Gilstrap, J.) (suggesting software-based claims may demand a higher level of pleading); *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) (citing *Fractus* for same).

**2. ITP Similarly Ignored Other Limitations for the Active Patents**

ITP similarly failed to adequately address other limitations in one or more of the Active Patent claims. Further examples are provided below.

First, each of the asserted claims for the ’814, ’469, and ’085 patents include “initial execution” limitations. ITP fails to address this claim language for any of these patents. Indeed, the only time “initial execution” appears in the Complaint is when ITP repeats the entirety of the asserted claims for the ’814, ’469, and ’085 patents. Nowhere does ITP provide any factual allegations or explanation as to how this element is satisfied. This is insufficient. *Bot M8*, 4 F.4th at 1355.

Second, each of the asserted claims for the ’814 and ’146 patents include limitations reciting “expected input and output behavior.” But rather than substantively address these limitations, ITP merely repeats the claim language followed by a screenshot without any meaningful description of how the screenshot satisfies the text of the claim. (*See e.g.,* Compl. ¶¶ 157, 211.) This is not enough. *Chapterhouse*, 2018 WL 6981828, at *2-3.

ITP’s conclusory reference to a screenshot is particularly problematic because the screenshot actually shows non-infringement. In both the ’814 and ’146 patents, the “expected input and output behavior” limitations are part of integrity checks of a *protected* application. But the screenshot that ITP cites to relates to profiling steps for an “unprotected build”—i.e., the profiling steps ITP appears to be relying on are necessarily prior to and unrelated to the integrity checks required by the claims. (Compl. ¶¶ 157, 211.) Indeed, ITP’s citation to the “unprotected

build" for this limitation is entirely inconsistent with its reliance on functionality from a protected build for the other limitations. "Where, as here, the factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8*, 4 F.4th at 1354.

Third, each of the asserted claims for the '751, '469, and '085 patents include limitations related to "expected resource call behavior." But once again, ITP completely ignores this claim language—the language only appearing when the Complaint repeats the entirety of the asserted claims for the '751, '469, and '085 patents. ITP's failure to include any factual allegations of what in the accused software products allegedly corresponds to the "expected resource call behavior" fails its burden under *Iqbal/Twombly* standard. *Bot M8*, 4 F.4th at 1355.

ITP's failure to identify any factual basis for these limitations warrants dismissal.

### C. ITP Failed to Assert a Plausible Claim for Pre-Filing Indirect Infringement or Pre-Filing Willfulness

Both induced infringement and willful infringement require knowledge of the existence of the patent that is infringed. *See Commil USA*, 575 U.S. at 639-640 (liability under Section 271(b) "can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement'") (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)); *Touchstream Techs., Inc. v. Altice USA, Inc.*, No. 2:23-cv-00060-JRG, 2024 WL 1117930, at *2–3 (E.D. Tex. Mar. 14, 2024) (Gilstrap, J.) (willful infringement requires knowledge).

ITP's Complaint fails to include any facts supporting pre-suit knowledge, such as a pre-filing notice or pre-suit interactions. Instead, ITP merely alleges knowledge as part of a rehash of the legal standard:

> Guardsquare knew of the [individual patent] and knew that its customers' use of the Accused Instrumentalities would constitute

> infringement of the [individual patent], or was willfully blind to such infringement.

(Compl. ¶¶ 162, 216, 237.) This Court need not, and should not, accept this conclusory allegation as true. *Twombly*, 550 U.S. at 555; *Collins*, 224 F.3d at 498. Instead, the Court should dismiss ITP's pre-filing indirect infringement claims for the '814, '469, and '085 patents, and ITP's pre-filing willful infringement allegations as to all of the Active Patents. *Cyboenergy*, No. 2:23-CV-00311-JRG, Dkt. 25 at 11, 13.

## V. CONCLUSION

For these reasons, Guardsquare requests that the Court dismiss ITP's lawsuit for failure to state a claim.

Dated: September 14, 2026

By: */s/ Orion Armon*

Orion Armon (CO 34923)
oarmon@cooley.com
Eamonn Gardner (CO 38088)
egardner@cooley.com
Cooley LLP
1144 15th Street
Suite 2300
Denver, CO 80202-2686
Telephone: +1 720 566 4000
Facsimile: +1 720 566 4099

*Attorneys for Defendant Guardsquare NV*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 14, 2026.

*/s/ Orion Armon*
Orion Armon